IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JASON SMITH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>AUDI MOBILE, owned by )<br>CARLOCK AUTOMOTIVE )<br>GROUP, )<br>)<br>Defendant. ) | CIVIL ACTION NUMBER:<br>1:24-cv-000389<br>JURY DEMAND |

# **COMPLAINT**

## **I.    JURISDICTION**

1.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §12117, 28 U.S.C. §1331. The jurisdiction of this court is invoked to secure protection of, and redress deprivation of rights secured by the Americans with Disabilities of Act 1990, as amended, 42 U.S.C. §12101, *et seq*. providing for injunctive and other relief against employment discrimination.

2.    Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. §12117.  Plaintiff timely filed his charge of discrimination within 180 days of occurrence of the last discriminatory act.  Plaintiff also timely filed this complaint within ninety (90) days of the receipt of his Notice of Right to

1

Sue issued by the Equal Employment Opportunity Commission.

## II. PARTIES

3. Plaintiff, Jason Smith (hereinafter "Smith" or "Plaintiff") is a citizen of the United States and a resident of Fairhope, Baldwin County Alabama.

4. Defendant, Audi Mobile, owned by Carlock Automotive Group, (hereinafter "Audi Mobile" or "Defendant") is an employer pursuant to 42 U.S.C. §12111(5) and is doing business in the State of Alabama.

## III. FACTUAL ALLEGATIONS

5. Plaintiff adopts and incorporates by reference the allegations contained in ¶¶1-4 above.

6. Plaintiff is a qualified individual with a disability. Plaintiff has a medical condition, Parkinson's Disease. Plaintiff has a record of a disability and was regarded as disabled by Defendant.

7. On October 1, 2020, Plaintiff was hired as the General Sales Manager for Audi Mobile. At the time of his hire, Audi Mobile was owned by Gulf Coast Automotive Group.

8. On September 1, 2022, GCAG was purchased by Carlock Automotive Group. At the time of purchase, Plaintiff's General Manager was Marc Heiter. The new owners terminated the Porsche Sales Manager (Winn Jarvis) during the first week of ownership. Marc Heiter told the new owners that Plaintiff was the best Sales

Manager that he had ever worked with and that they would be crazy to let him go. Marc Heiter left the dealership to pursue another position in October 2022.

9.  In or around June 2023, Plaintiff was diagnosed with Early Onset Parkinson's Disease and informed his current General Manager, Aldo Abad, in writing of his diagnosis - via text message.

10. On August 8, 2023, Plaintiff was due to be paid his commissions earned in July 2023, as well as a draw check, via direct deposit on August 10, 2023. Plaintiff received nothing deposited for this scheduled pay date. When nothing was paid, Plaintiff reached out to Abad, and he advised the plaintiff he would look into it. Abad informed the plaintiff on August 11, 2023, that his "pay plan had changed" and he would "have to get with [the plaintiff] about it later." However, Plaintiff was never notified of any change in his pay plan or given any indication that he would not be paid. Up until this point, there had never been a month that Plaintiff received $0 commissions. At the very least, Plaintiff should have been paid the draw portion of that check which was $5,000.00.

11. Plaintiff believes this pay plan change was a strategic plan by owners/managers of Defendant to force him to quit his job due to his disability.

12. In or around September 2023, Plaintiff led Audi to produce the highest sales numbers on record for a period of 4 years for Audi Mobile.

13. In or around September 2023, Plaintiff was made aware that the Porsche and Audi stores were being split due to a restructure. Plaintiff was never informed that his pay or commissions would change nor was he given or informed of a new pay plan.

14. In or around September 2023, Plaintiff's General Manager Abad was moved to another brand in the dealership and a new General Manager, Charlie Cashen, was brought in for Audi. At this time, Cashen was made aware in writing (via text message) of Plaintiff's diagnosed medical condition. Cashen acknowledged that the pay plan that the plaintiff was put on without his knowledge by the previous manager Aldo Abad was unacceptable and that he was going to make sure that he changed it.

15. On October 10, 2023, Plaintiff was due to be paid commissions for sales earned from September 2023 (month with the highest sales numbers for Audi in a span of 4 years) plus a draw check of $5,000.00. However, Plaintiff was only paid $1,700.00 total. Plaintiff asked Cashen if that amount was correct (in writing via text message) and Cashen said he would look into it, and it would discuss the following Monday. However, Cashen never addressed it on that Monday, or at all. Plaintiff verbally asked Cashen about it at least twice and was put off by Cashen each time.

16. On October 12, 2023, Plaintiff let Cashen know that he would need to take a sick day because of a migraine headache. This was the first time that Plaintiff had taken a sick day since Carlock Automotive Group purchased the dealership in October 2022. Even though Plaintiff was out sick that day, he was still in contact with his salespeople helping them with deals and performing his job duties remotely.

17. On October 19, 2023, Plaintiff was terminated around 10:00 a.m. by Cashen, and was told "[w]e're going in a different direction." Plaintiff asked if he was being terminated because of having Parkinson's and Cashen immediately stated "no, no, no." However, Plaintiff knew that his termination could not be for performance as the last month was the best sales performance month Audi Mobile had ever had. Cashen said nothing and did not give Plaintiff a specific reason for his termination. Cashen just stood up and walked out of the plaintiff's office - no handshake, goodbye or anything.

18. Since Cashen had told the plaintiff several times from September 2023 to October 2023 that he was doing a great job as evidenced by his sales numbers, Plaintiff's termination came as a total surprise to him. Plaintiff was well liked and well respected by everyone across all brands of the dealership. Plaintiff had good relationships with all employees and did not have any issues with them. Plaintiff's performance had nothing to do with his termination.

19. After Plaintiff was terminated on October 19, 2023, he requested a refill on a prescription at his pharmacy on October 20th. The pharmacy ran the prescription on his insurance, and it was paid. Plaintiff was informed by BCBS on October 23rd that Defendant canceled his policy that day with a retroactive date of October 19th - the day he was terminated. Because of this, Plaintiff was told by BCBS that he would be billed for and have to pay back the insurance paid portion of that refill. The premiums for his insurance were deducted from the payroll checks and coverage was always to the last day of the current month. Furthermore, Plaintiff had never had his health insurance canceled on the day he left a job during his over 26 years of experience in this car/sales industry.

20. On information and belief, Plaintiff believes that Defendant perceived him as a liability once Defendant was made aware of his Parkinson's diagnosis and that Defendant was that he could ask for accommodations pursuant to the American with Disabilities Act. Even though Plaintiff could perform all of the essential functions of his job and was doing so successfully, Defendant perceived him as disabled.

21. On information and belief, Plaintiff also believes that Defendant was concerned that his diagnosis may cause the group policy premiums to increase, and Defendant was eager to have him removed from the plan, which was evident by

Defendant making sure his plan was retroactively canceled to the date that he was terminated.

22. On information and belief, Plaintiff believes Defendant withheld Plaintiff's pay on two occasions in an effort to make him quit his job, and when Plaintiff did not quit, Defendant terminated the plaintiff due to his disability and/or perceived disability.

23. Plaintiff believes that he was terminated because of his disability, his record of a disability, and/or Defendant's perception of his disability in violation of the Americans with Disabilities of Act 1990, as amended, and the Americans with Disabilities Amendments Act ("ADAAA").

24. Because of Defendant's actions, Plaintiff suffered an adverse employment action, lost wages and benefits and emotion distress.

## COUNT ONE - DISABILITY DISCRIMINATION

25. Plaintiff adopts and incorporates, by reference, the allegations contained in ¶¶1-24 above.

26. Plaintiff is a person with a disability in that he has a physical impairment which substantially limits one or more of his major life activities. 42 U.S.C. §12102. Furthermore, he is a qualified individual with a disability in that he has a record of impairment and is perceived as having an impairment which substantially limits one or more major life activities in accordance with 42 U.S.C.

§12102. As stated, Defendant is an employer in accordance with 42 U.S.C. §12111(5).

27. Despite Plaintiff's disability, he is and was able to perform the essential functions of the position he held with Defendant prior to his termination. Defendant discriminated against Plaintiff because of his disability by terminating his employment, by not paying his proper salary and commissions prior to his termination, and by cancelling his health insurance before the end of his paid premiums period.

28. Plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, an injunctive and a declaratory judgment. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

29. As a result of Defendant's willful and malicious actions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury, including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

## V.  **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.     Issue a declaratory judgment that the employment policies, practices, procedures, conditions, and customs of Defendant are violative of the rights of Plaintiff as secured by the Americans with Disabilities Act (ADA), as amended and the Americans with Disabilities Amendments Act ("ADAAA").

2.     Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant and at Defendant's request from continuing to violate the Act of Congress known as the Americans with Disabilities Act (ADA), as amended, and the Americans with Disabilities Amendments Act ("ADAAA").

3.     Enter an Order requiring Defendant to make Plaintiff whole by awarding him the position(s) he would have had occupied in the absence of disability discrimination in his pay and termination, back-pay (plus interest), declaratory and injunctive relief, liquidated damages, compensatory and punitive damages, lost seniority, benefits, and lost pension.

4.     Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees, and expenses.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted,

/s/ **_Candis A. McGowan_**
Candis A. McGowan
Counsel for Plaintiff

OF COUNSEL:

WIGGINS, CHILDS, PANTAZIS,
    FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500
cmcgowan@wigginschilds.com

**DEFENDANT'S ADDRESS**
Audi Mobile, owned by Carlock
    Automotive Group
1445 E Interstate 65
Service Road S
Mobile, Alabama 36606

10